**THE EIGHTEENTH JUDICIAL CIRCUIT, IN AND FOR SEMINOLE COUNTY, FLORIDA**

FILED IN OFFICE
GRANT MALOY
CLERK CIRCUIT COURT
2022 AUG -1 AM 11:
BY SEMINOLE CO. FL

JAMES OWENS

**Plaintiff,**

v.

FIRST PROTECTIVE INSURANCE CO; d/b/a FRONTLINE INSURANCE UNLIMITED COMPANY. SEAN MERRELL, Director of Claims and KEVIN TOWNSEND, Claim Department Team Manager

**Defendants,**

Case No.: 22CA1777

**WRONGFUL TERMINATION UNDER THE WHISTLEBLOWER PROTECTION ACT AND DISCRIMINATION IN THE TREATMENT OF PERSONS IN THE WORKPLACE**

***JURY TRIAL DEMANDED***

Judge:

Date Action filed: August 1, 2022

Date set for trial: August 1, 2023

## I. COMPLAINT

1. The plaintiff brings forth this complaint regarding an unlawful termination executed by defendant First Protective Insurance, d/b/a (**doing business as**) Frontline Insurance Company, which was constituted as an illegal termination under several Federal Statutes, Florida Statutes and Amendments. The plaintiff was terminated as a result of bringing forth illegal and unconstitutional claim practices that were present within the defendants' claims department. The defendant was instantaneously fired, prior to being capable of reporting these actions to the human resources department.

As a result, this has caused a significant negative impact on the plaintiff's livelihood, career, and mental health.

UNOFFICIAL

2. The defendant's decision to terminate the plaintiff occurred just after his request, that a meeting, with Frontline Insurance Company managers. The plaintiff ***requested*** this meeting be held, inclusively with the defendant's Vice President to ensure all personnel was aware of the illegal and improper claim practices, but this request was rejected. The defendants' Daily Claims Manager Kevin Townsend rejected this request in order to keep the manager's developed illegal claim practices concealed. Hence, upon this meeting being held with Frontline Insurance managers and Director only, matters were brought up regarding the new implementation of the *Option to Repair* Team claim practices, which at the time, were illegally implemented according to the National Association of Insurance Commissioners and Florida Statutes. This meeting was requested and held with several Frontline Insurance managers, bringing forth concerns and possible solutions regarding the claim practices, to better assist the claim department and discontinue the illegal claim practices.

3. This complaint seeks equitable and injunctive relief for the unlawful termination of the plaintiff, who requested a meeting to correct the unlawful practices to create a standard operating work environment for Frontline Insurance Company. This complaint additionally seeks damages for discrimination in the treatment of a minority employee without any justifiable reasoning. The *Standard Operation Procedure* for an employer before terminating an employee is to provide a "coaching" or write-up with the employee of concern. "No reason" for the termination, was the cause for the plaintiff's dismal according to Frontline Insurance Human Resource department, which presumes itself as an illegal termination, upon the given facts.

4. Finally, this complaint seeks treble and punitive damages for opposing fraud and conspiracy in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), for

UNOFFICIAL

the defendants' collective and organized concealment of unlawful claim practices according to the defendant's claim files and claim management system, which shall be presented as an exhibit.

## II. JURISDICTION and PARTIES

5. Defendant Frontline Insurance Company has principal places of business in Lake Mary, Florida. The Frontline Insurance Company has local offices in Lake Mary, Florida, and performs insurance-related business in the state of Florida, Alabama, Georgia, North Carolina, and South Carolina. Plaintiff, James Owens is a resident of Florida and resides in Seminole County. All events giving rise to this incident took place in Lake Mary, Seminole County, Florida. Therefore, the jurisdiction of this court is proper.

## III. FACTUAL ALLEGATIONS

6. Florida is considered an *at-will* employment state, however, the federal and state laws prohibit employers from firing employees, for practices such as discrimination, retaliation, or firing, as a result of an employee opposing any unlawful practice. Several Federal laws, Florida Statutes, and the National Association of Insurance Commissioners' Unfair Claims Settlement Practice Acts were breached by Frontline Insurance Daily Claims Director Sean Merrell and Claims Unit Manager Kevin Townsend just prior to James's termination, which shall be presented in evidence.

7. Prior to the plaintiff's termination, he addressed the issue of Florida governmental statute § 626.9541, where Frontline was at fault for misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue to their insurance policyholders. Also refusing to allow the claims adjusters to legally negotiate agreements with policyholders or contractors. Defendant Frontline Insurance created a new process which was called the "Option to Repair"

UNOFFICIAL

program, around early to mid-January 2022. The claims department managers requested that after a field inspection was performed that all claims be immediately transferred to the new *Option to Repair* program. Rejecting all negotiations with policyholders, contractors, and third-party associates. Also directing that all property damage payments were only to be contingent on the Frontline Insurance field adjuster's estimates, which were not accurately adjusted or provided the bare minimum to the policyholder's property damages, which shall be presented in exhibits. The Frontline Insurance managers requested that all claims be transferred to one of their preferred vendors, removing the option to allow a fair settlement with homeowners, contractors, or public adjusters which are all state-licensed entities, which shall be presented in evidence.

8. The state of Florida legislature passed Senate Bill 76, which has created a direct requirement for insurance carriers to abide and adhere. The defendants' estimates comprised by the defendant's field adjusters, provided the bare minimum and did not include the necessary Florida building codes or industry standards for repairs or replacement of the policyholder's property damages, which the plaintiff brought to the Frontline claim manager's attention. These infractions were addressed during a virtual meeting requested and scheduled with Frontline Managers, Sean Merrell, Kevin Townsend, Walt Umphrey, and Steven Medina. Documentation of this scheduled meeting has been recorded in the defendant's claim management system.

9. In this meeting with the defendant, the plaintiff suggested that instead of improperly transferring claims to the Invoke Team, it was required by the state of Florida that the claims were settled with an agreement or in a fair and legal practice with either the homeowners, contractors, or third-party representatives. Mr. Sean Merrell, the Director of Claims mentioned that this would be permitted but only according to the field adjuster's inaccurate estimates. Plaintiff James Owens also addressed that the field adjuster's estimates did not provide the

UNOFFICIAL

requirements such as the Florida Building codes and industry standards for property damage, however, Mr. Sean Merrell was firm on his decision to only settle according to the inaccurate and illegal estimates.

10. Lastly, the plaintiff also addressed the issue of the defendants' policy discrepancy where Frontline Insurance managers were misrepresenting policy information with letters being sent to their policyholders which contained false interpretation of the policyholder's policy, which is also recorded and documented in the defendants' claim management system. By issuing out false information contradictive to the policyholder's policy agreement or rights, defendant Frontline Insurance established illegal claim practices.

11. The Frontline Insurance Homeowners 3 policy states: "Section 1 – Conditions: Our Option. "*For losses settled on an actual cash value basis, if we (Frontline Insurance) give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with material or property of like kind and quality*".

12. Just prior to the plaintiffs' termination, he attempted to address the matter that the defendants newly implemented Option to Repair program was being illegally implemented. The defendants were immediately turning over the property damage claims to the *Option to Repair* program, prior to receiving a signed, sworn proof of loss from the policyholders, according to their policy agreement, which shall be presented in evidence. In lieu of the defendants' newly implemented claim practice of misrepresenting policy information, they have collectively implemented unfair methods of competition and unfair or deceptive acts or practices according to the Florida Statutes.

UNOFFICIAL

## IV. CAUSES OF ACTION

***FIRST CAUSE OF ACTION***

***WRONGFUL TERMINATION; WHISTLEBLOWER PROTECTION ACT***

13. On February 07, 2022, the plaintiff was wrongfully terminated by defendant Frontline Insurance Company in lieu of addressing the defendant's unfair methods of competition and unfair or deceptive acts or practices. These unfair practices were addressed by the plaintiff in a meeting that was held just a week prior to his termination.

14. Infractions were breached by the defendant, according to The Whistleblower Protection Act (WPA), stating employees and applicants are protected, who lawfully disclose information they reasonably believe consists of evidence of fraudulent and financial issues. An employer cannot retaliate against such individuals for exercising their rights under the Department of Labor's whistleblower protection laws. Retaliation includes actions such as firing or laying off, demoting, denying overtime or promotion or reducing pay or hours. Retaliation occurs when an employer (through a manager, supervisor, or administrator) fires an employee or takes any other type of adverse action against an employee for engaging in protected activity.

15. In addition, according to the Florida Title XXXVII Chapter 626, Insurance Field Representatives and Operations, (626.9541): "*Unfair methods of competition and unfair or deceptive acts or practices are defined as such: (a) Misrepresentations and false advertising of insurance policies.—Knowingly making, issuing, circulating, or causing to be made, issued, or circulated, any estimate, illustration, circular, statement, sales presentation, omission, comparison, or property and casualty certificate of insurance altered after being issued, which.*"

*16. "Misrepresents the benefits, advantages, conditions, or terms of any insurance policy.*

*(i) Unfair claim settlement practices.—1. Attempting to settle claims on the basis of an*



UNOFFICIAL

*application, when serving as a binder or intended to become a part of the policy, or any other material document which was altered without notice to, or knowledge or consent of, the insured."*

17. *"A material misrepresentation made to an insured or any other person having an interest in the proceeds payable under such contract or policy, for the purpose and with the intent of effecting settlement of such claims, loss, or damage under such contract or policy on less favorable terms than those provided in, and contemplated by, such contract or policy;"*

18. *"Committing or performing with such frequency as to indicate a general business practice any of the following: a. failing to adopt and implement standards for the proper investigation of claims. b. Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue. c. Failing to acknowledge and act promptly upon communications with respect to claims".*

19. Moreover, subsequent to holding this manager's meeting, the plaintiff cooperatively managed all claims according to the Directors of Claims Sean Merrell's directions without rebuttal or known issues, which was to "only settle claims based on the field adjuster's estimate." These property damage estimates were not being accommodated fairly and provided no supplemental benefits that were necessary for the repair or replacement of the homeowner's property, which shall be presented in the exhibits. Not only were these estimates inaccurate, but as mentioned, claim letters were being issued to policyholders that misrepresented actual policy information, which shall be presented in the exhibits

20. The defendant knew that the implementation of their claim settlement practices was unfair and deceptive, which was orchestrated to help benefit the incorporations and shareholders' finances. However, per the defendant's policy agreement this claim settlement act was not



UNOFFICIAL

permissible, and such act was a misrepresentation of the homeowner's policy agreement. The defendant directed all of its claim adjusters working in this department to issue homeowners a *letter* to advise the policyholders of their request to send all new claims to this specific department, without consent. It is unclear as to why all claims were required to be sent to this department, as the defendant's policy agreement states that it is only deemed applicable for settlements that were based on actual cash value, and not replacement cost value. Actual cash value is the appraised amount to repair or replace the damaged property at the time of loss considering its age and depreciation. Replacement cost value damages are appraised on the bases of the current market value to replace property damage in full reimbursement. All of the defendant's homeowner's policies are based on *replacement* cost value policies and not an actual cash value, which has a direct correlation with the policyholder's premium and how much coverage is to be afforded for their property damages.

**V. SECOND CAUSE OF ACTION**

**UNFAIR CLAIM SETTLEMENT PRACTICES:**

**TITLE XXXVII CHAPTER 626**

**INSURANCE FIELD REPRESENTATIVES AND OPERATIONS**

21. The defendant's method of claim settlement was outside of the governmental standards and statute enforcement, which ultimately created an unstandardized work environment that ultimately endangered the livelihood, mental health of its claim's adjusters, and the company's work environment.

22. The defendants were aware of this unfair claim settlement risk and notwithstanding that knowledge, concealed these dangers from policyholders, contractors, and union workers of the state of Florida.



UNOFFICIAL

23. After the defendant's manager's meeting was held, the defendant's director of claims demanded to only settle claims according to the field adjusters estimate. Specifically indicating to not accept supplemental payments. This resulted in many insurance payers still dismembered, as this left claimants to compensate their contractors, out of pocket, for the dividend of the cost to replace the reported property damage. Contractors and public adjusters demanded revocation of this infraction, as they threatened to suspend the license of active adjusters in the specific claims department. Which was the sole reason for holding this meeting with Frontline managers. As insurance payers and third-party associates continued threatening to file Civil Remedy Notices with the department of Financial Services, increasing significantly, adjusters were at risk of losing their state license, if claims were not accommodated according to the Florida statutes. These civil remedies are known as permanent and public records for any future employer to review before hiring. Thus, immense pressure and demands were placed on the specific Frontline Insurance claim department, composed of 3 or 4 adjusters accommodating a significantly high volume of claims.

24. All of the defendants' insurance policies cover the states of Florida, Georgia, Alabama, North Carolina, and South Carolina. Frontline Insurance Companies' revenue in 2021 exceeded just $87,000,000.00. Manipulating, or conducting unfair claim settlement practices and ignoring policyholders' requirements of state law building codes is outright unconstitutional. These insurance policies are regarded as replacement cost value policies. Meaning homeowners are choosing to pay "more" in their insurance premium to ensure full coverage for their property damage. Any motions of approval to change any insurance policy language would need to be passed within the State of Florida Supreme Courts before any insurance carrier or employer can make changes or perform certain actions under a homeowners policy agreement, as such. These



UNOFFICIAL

laws and actions were not performed by Frontline Insurance Company before assigning all claims to their Invoke Team program, which plaintiff James Owens attempted to bring light to this situation, but was in turn, wrongfully terminated.

## VI. THIRD CAUSE OF ACTION

***RICO ACT***

***CONSPIRACY AND FRAUD IN VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS***

25. The defendants actively engaged in a conspiracy to defraud insurance payers by collectively agreeing to conceal the presence and adverse implementation of their illegal claim settlement practices.

26. January of 2022, the defendant successfully created the "*Option to Repair*" department which required all claims to be transferred to the favorable program vendors only, without the policyholder's consent, approval, or policy agreement. This was unlawful under the policyholder's contract agreement and prevented under the regulation of Florida Statute, XXXVII Chapter 626.

27. All participant defendants contributed financially, to lobbying property damage funds aimed at generating additional revenue back into the powerful insurance incorporation and stockholders. The defendant spearheaded the illegal practice to discourage insurance payers, contractors, and state licensed public adjusters to provide a beneficial reduction in property damage and replacement cost value for property damage, and a favorable exclusivity provision between the defendant and all preferred vendor companies. Under the condition that, preferred vendors such as "*Tracker Claims LLC*", refrain from providing accurate and authentic estimates



UNOFFICIAL

to replace homeowner's property damage or provide a supplemental payment at a later date, which shall be presented in evidence.

28. As a result of this collective action to defraud insurance payers, state-licensed contractors, and state-licensed public adjusters, the plaintiff has suffered significant injuries, including economic and non-economic damages as indicated above from the wrongful termination. Treble damages are therefore appropriate under abusive acts above, to punish the conspiratorial nature of the defendants' planned concealment of known illegal claim practices, as well as discrimination presented by the defendant, resulting in the wrongful and detrimental termination of the plaintiff.

## VIII. FOURTH CAUSE OF ACTION

***FAILURE TO WARN***

29. The defendant, as a federally regulated insurance company, has the requirement to utilize lawful employment practices and standards. One standard of which, pertains to providing warnings or coaching to an employee and other general workforce members about the presence of breached employee agreements or policy requirements that presents a risk to their company's work environment prior to immediate termination.

30. The defendants' claims managers knew, or with the exercise of reasonable care, should have known that the plaintiff presented a case to only create a legal insurance operation procedure, by abiding by Federal and State regulations and to accommodate policyholders in a fair and legal claims action. The implementation of the "Option to Repair" program was a direct violation of the Federal and State Insurance regulation, which resulted in illegal claim practices presented above, which also resulted in the termination of the plaintiff. Despite this knowledge, no information, write-ups, or coaching was offered to the plaintiff.

UNOFFICIAL

31. At all times relevant to this litigation, the defendants had actual and/or constructive knowledge of the illegal practices mentioned above. Despite this knowledge, the defendant's managers proceeded to terminate the plaintiff for discussing the illegal acts addressed above and continued to operate its illegal and unfair claim settlement practices with reckless disregard for the Federal and State Insurance regulations and requirements. Including premium-paying policyholders by revoking all contractor's agreements and disassembling public adjuster's contract agreements without their consent. The defendant continued to implement its claim settlement standards containing reckless disregards for all associated laws, statutes, and procedures.

32. The defendant breached its duty to warn the plaintiff, policyholders, and insurance payees about its actions.

33. The defendant's failure to stop it acts illegal practices have resulted in profound non-economic and economic damages to the plaintiff that will result in years or decades of hardship.

## IX. PUNITIVE DAMAGES

34. The conduct of the defendants described above is illegal and subtly genocidal as the defendants' conduct demonstrates a reckless and negligent disregard for human livelihood and 21st-century union rights, laws, and a conscious disregard for the public's safety. The acts and omissions described above were willful and performed with actual or implied malice, as exhibits will show. Punitive and exemplary damages are therefore appropriate and should be strictly imposed on the defendant.

## X. PRAYER FOR RELIEF

35. WHEREFORE, as a result of permanent damages it is at James Owens's request and prayers that a punitive settlement in the amount of 5,600,000.00 dollars be granted on behalf of



UNOFFICIAL

the defendant. As these damages are relevant and substantiated to medical expenses, attorney fees, defamation of character and resulting financial-economic damages. All relevant documentation and exhibits should also be turned over to all involved insurance payers, contractors, and public adjusters that were also involved in each illegal claim file, in the instance a class-action lawsuit becomes applicable. Dated: August 1, 2022.

James Owens - 8/1/2022

[signature] - 8/1/2022

2535 bowmer drive
Kissimmee, FL 34744
407-529-4549
jamesowens1014@gmail.com

UNOFFICIAL